U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUL 14 2005

ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| DIANNE BESS | * | CIVIL ACTION NO. 04-1072 |
| VERSUS | * | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Dianne Bess, born December 28, 1947, filed an application for disability insurance benefits on November 7, 2000, alleging disability as of October 3, 1994, due to post-surgical shoulder numbness and tingling and severe depression.[1]

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled and that this case should be remanded for further proceedings.

---

[1]Claimant filed a previous application on November 8, 1995, which resulted in a partially favorable decision on June 26, 2000, allowing claimant a closed period of disability beginning October 3, 1994 and ending November 1, 1995. No further appeal was taken.

In fulfillment of F.R.Civ.P. 52, I find that this case should be remanded for further proceedings, based on the following:[2]

**(1) Records from Dr. Roland C. Miller dated April 11, 1995 to November 22, 1996.** Dr. Miller performed a diskectomy and fusion of a herniated disc at C6-C7 on April 11, 1995. (Tr. 144-47). On April 12, 1996, he noted that claimant was still having some pain in the shoulders and radiation into the arm, but it was not as severe as pre-operatively. (Tr. 218, 370). He assessed her with a 10 % permanent partial whole body physical impairment, and an 80 percent functional loss of work capacity, putting her in the light to possibly sedentary categories for work. He opined that she had reached maximum medical improvement and that further surgery was not necessary.

On November 22, 1996, claimant complained of continued neck pain with some occasional pain into her arms. (Tr. 369). Dr. Miller opined that she had no major change in her status. He explained that she would have some permanent problems with her neck injury and should expect this. He encouraged her to slowly wean herself off of the non-narcotic pain medication which she was taking.

**(2) Records from Dr. D. Thomas Curtis dated November 7, 1996 to**

---

[2]Although all of the records were reviewed by the undersigned, only those relating to the current application are summarized herein.

2

**December 12, 2000**. Dr. Curtis saw claimant for complaints of back and shoulder pain, heart burn and depression. (Tr. 375-379). On June 21, 2000, her blood pressure was 180/104. (Tr. 376). Her blood pressure dropped to 120/78 on November 2, 2000. (Tr. 375). She was prescribed Serzone and Remeron for depression, and Prilosec for heartburn.

### (3) Consultative Internal Examination by Dr. Kenneth A. Ritter, Jr. dated March 21, 2001. Claimant complained of post-surgical left shoulder numbness which occasionally radiated into her arm with coughing, and feeling "somewhat depressed." (Tr. 383). Additionally, she reported vision trouble because of cataracts, occasional headaches, occasional episodes of heart fluttering for the past several days, and occasional nocturia. She had been diagnosed with high blood pressure two years earlier. (Tr. 384). She reported that she had run out of her anti-depressant medicine, but was taking medication for blood pressure. (Tr. 385).

On examination, claimant was 5 feet 4 ½ inches tall and weighed 174 pounds. (Tr. 384). Her blood pressure was 172/100. Her heart had sinus rhythm with no murmur or gallop.

On extremities examination, she had no ankle swelling, full range of motion of all extremities, negative straight leg raises, normal gait and station, and normal dorsalis pedis pulses. Neurological examination was intact with normal DTRs,

3

strength and sensation.

Dr. Ritter's impression was hypertension, with elevated blood pressure during examination; a history of depression, noting that she seemed "reasonably normal" on examination, and complaints of post-surgical left shoulder and trapezius area numbness and pain, with radiation to the left arm with coughing.

In the Medical Assessment of Ability to do Work-Related Activities (Physical), Dr. Ritter determined that claimant could lift/carry 25 to 35 pounds occasionally and 10 to 25 pounds frequently; had no restrictions as to standing/walking/sitting; could occasionally climb, and frequently, stoop, kneel, balance, crouch and crawl. (Tr. 386). She had no limitations as to physical functions and no environmental restrictions. (Tr. 387).

**(4) Report from Dr. Thomas Casanova, III dated May 9, 2001**. Dr. Casanova diagnosed claimant with early cataract formation. (Tr. 388). Her vision was 20/40 uncorrected and 25/20 corrected in the right eye, and 20/60 uncorrected and 25/20 corrected in the left. His prognosis was that her vision could be restored by surgery or other treatment.

**(5) Consultative Psychological Examination by Dr. Alfred E. Buxton dated June 12, 2001**. Claimant related a history of chronic depression, pain in the right arm and shoulder which had migrated to the left side, and high blood pressure. (Tr. 391).

4

She reported fair sleep, good appetite, and poor energy and libido. She was able to cook, clean, shop, manage money, travel, communicate, and manage time independently.

On examination, claimant's verbal receptive and expressive language skills were good. Dress and groom and social skills were also good. Recent and remote memories were intact. Ability to attend and concentrate was good. Pace was even. Intellect appeared to be within normative limits. Judgment, reflective cognition and reasoning were good.

Insight was fair, cognitions were clear and cogent, and mood was dysphoric. Claimant's affect was sad with open tearfulness. She cried throughout most of the interview process. Her self-image was poor, and goal orientation was fair. She was alert, responsive, and oriented in all four spheres.

Dr. Buxton's impression was chronic pain, with degree of impairment mild to moderate and prognosis guarded, and dysthymic disorder, with degree of impairment moderate and prognosis guarded. He regarded claimant as being competent as a manager of her own personal affairs. Her Global Assessment of Functioning score was 65 over the previous 12 months. He recommended continued medical monitoring and management of her high blood pressure and pain, as well as resumption of outpatient mental health intervention for her dysthymia and chronic

pain.

**(6) Residual Functional Capacity Assessment (Mental) dated June 29, 2001**. Dr. Linda Upton determined that claimant was moderately limited as to her ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods, to perform activities within a schedule, to complete a normal workday and workweek without interruptions, and to interact appropriately with the general public. (Tr. 394-95). Dr. Upton noted that while claimant had alleged depression and there was evidence of a dysthymic disorder, the objective evidence was lacking for her alleged memory impairment. She noted that claimant could adapt to the demands of a routine work setting; however, pace and regular attendance might be moderately impaired by her depressive disorder.

**(7) Psychiatric Review Technique Form dated June 24, 2001**. Dr. Upton assessed claimant for affective disorders. (Tr. 398). She found that claimant had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (Tr. 408). She also determined that claimant had mild restriction of activities of daily living, but no repeated episodes of decompensation.

6

**(8) Residual Functional Capacity Assessment – Physical dated July 5, 2001**. Claimant was found to be able to lift 20 pounds occasionally and 10 pounds frequently. (Tr. 413). She could stand/walk/sit for about six hours in an eight-hour work day. She had unlimited push/pull ability. She had occasional limitations as to climbing ramps and stairs, but could frequently perform all other postural activities. (Tr. 414). It was noted that claimant had evidence of high blood pressure with no end organ damage and cervical disc disease, but was able to maintain activities of daily living. (Tr. 417).

**(9) Records from LSU-University Medical Center dated January 15, 2001 to December 4, 2001**. On January 15, 2001, claimant complained of pain between the shoulder blades for five or six months. (Tr. 440). On September 7, she continued to complain of left shoulder pain radiating to her hand, a lump on her shoulder, right ankle pain and low back pain. (Tr. 436-37). On examination, she had no radiculopathy. (Tr. 436). Cervical spine x-rays showed an old fusion at C6-7. (Tr. 433-35, 437). The assessment was a left shoulder mass, and left arm and low back pain. (Tr. 437).

An MRI dated November 29, 2001 showed a status-post C6-C7 fusion with no evidence of recurrence or other significant abnormality, and degenerative disc disease at C5-C6 with accompanying spondylosis, and no actual impingement of the cervical

cord or nerve roots. (Tr. 425, 427, 430). The impression on December 14 was neck and left shoulder pain. (Tr. 427).

**(10) Records from American Legion Hospital dated January 21, 2000 to May 25, 2000**. On January 20, 2000, claimant prevented for postmenopausal hormone replacement evaluation. (Tr. 445). She also complained of shortness of breath, left arm and chest pain, and left knee pain. Chest x-rays and knee views were negative. (Tr. 444, 448). Left shoulder x-rays showed calcific tendinitis. (Tr. 448).

On February 4, claimant reported that she was "feeling kind of woozy." (Tr. 447). She stated that Zoloft was helping. The assessment was tendinitis and depression. She was prescribed Celebrex and Zoloft.

**(11) Claimant's Administrative Hearing Testimony**. At the hearing on October 10, 2002, claimant was 54 years old. (Tr. 44). She testified that she was 5 feet 4 inches tall and weighed 175 pounds, which was about 30 pounds above her normal weight. She had completed the eleventh grade. (Tr. 45).

Claimant worked as a nurse's aide for eight years. (Tr. 46). She stopped working in 1994 after she became injured while lifting a 300-pound patient. (Tr. 47). She filed a worker's compensation claim, which settled for $5,000.

Regarding complaints, claimant testified that she had problems with her shoulder, back and knees. She reported that she had fusion surgery in 1995, which

8

gave her some relief. (Tr. 48). However, she was still having "little sticks," numbness and tingling down her left shoulder and arm. (Tr. 48-49).

Additionally, claimant complained of depression and anxiety, for which she was taking medication. (Tr. 49, 53). She complained that she had crying spells, and sometimes stayed in bed for a whole week. She also said that she did not sleep well. (Tr. 52).

Claimant also complained of high blood pressure, which caused headaches. (Tr. 55). Additionally, she reported shortness of breath. (Tr. 56). She testified that she was taking medication for depression, hormone replacement, high blood pressure and acid reflux. (Tr. 55).

As to activities, claimant testified that she and her husband prepared meals, did some household chores and yard work. (Tr. 50-51). She said that she and her spouse both grocery shopped. (Tr. 50). She stated that she attended church on Sundays and sometimes during the week. She testified that she was able to drive two or three times a week. (Tr. 45). Additionally, she watched television, listened to the radio and read her Bible. (Tr. 51).

Regarding restrictions, claimant reported that she could lift about 20 pounds. (Tr. 50, 57). She stated that she could walk around the block. (Tr. 56). She said that she could stand for a half hour, and sit for about an hour. (Tr. 57).

Additionally, claimant testified that she could reach forward and overhead with difficulty. She stated that she could grip. However, she reported problems with concentrating and being around other people.

**(12) Administrative Hearing Testimony of Lionel Bordelon, Vocational Expert ("VE").** Mr. Bordelon described claimant's past work as a certified nursing assistant as medium; a cook's helper as medium; a sewing machine operator as light, and a housekeeper as light. (Tr. 64). The ALJ posed a hypothetical in which he asked the VE to assume a claimant who had the same background and work experience as claimant and had all of the limitations to which claimant had testified. In response, the VE testified that claimant could not return to her past work. (Tr. 64-65).

The ALJ posed another hypothetical in which he asked the VE to assume a claimant of the same age, education and work experience; who could lift 20 pounds occasionally and 10 pounds frequently, and who could walk or stand for six hours out of an eight-hour day, but would be limited to one- to two-step jobs with limited public interaction due to depression. (Tr. 65). In response, Mr. Bordelon identified the job of assembler, of which there were 1,233,699 positions nationally and 6,263 statewide, we he reduced to 15 percent to fit the hypothetical. (Tr. 66). When the ALJ added the further restriction of limited push/pull ability with her upper extremities due to a

recent surgery, Mr. Bordelon stated that the number of assemblers would be reduced to a non-significant amount. After the ALJ further modified the hypothetical to a person who could lift 10 pounds occasionally and walk or stand two hours out of an eight-hour day, and would need one- to two-step types of jobs and limited public interaction due to depression, the VE opined that there would be no jobs available.

**(13) The ALJ's Findings**. Claimant argues that: (1) the ALJ applied an improper "non-severity" standard to conclude that plaintiff's additional impairments of hypertension and chronic pain were non-severe; (2) the ALJ's residual functional capacity finding is not supported by substantial evidence; (3) the ALJ erred in positing a defective hypothetical, and (4) the ALJ's failure to reopen claimant's partially favorable decision was not supported by substantial evidence and constitutes and abuse of discretion. Because I find that the ALJ erred in formulating her hypothetical to the vocational expert, I recommend that this matter be **REMANDED** for further proceedings.

As to the first argument, claimant asserts that the ALJ should have applied the "slight abnormality" standard set forth in *Loza v. Apfel,* 219 F.3d 378 (5th Cir. 2000), to determine whether claimant's impairments of chronic pain and hypertension were non-severe. This standard is as follows: "an impairment can be considered as not severe *only if it is a slight abnormality [having] such minimal effect on an individual*

11

*that it would not be expected to interfere with the individual's ability to work,* irrespective of age, education or work experience." (emphasis added). *Id. at 391* (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). In censuring misuse of the severity regulation, the court in *Stone* forewarned that the Fifth Circuit would "in the future assume that the ALJ and the Appeals Council have applied an incorrect standard to the severity requirement *unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) is used.*"[3] (emphasis added). *Loza*, 219 F.3d at 391 (quoting *Stone*, 752 F.2d at 1106).

In the decision, the ALJ cited the following standard: "[a] medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities (20 CFR §§ 404.1521)." (Tr. 16). Claimant asserts that the ALJ failed to apply the correct non-severity "slight abnormality" standard set forth in *Loza* in assessing her impairments of hypertension or chronic pain disorder. While the Commissioner acknowledges that the ALJ did not specifically cite *Stone*, she urges that such alleged

---

[3]Section (c) of 404.1520 provides in part: "[i]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."

error was harmless.[4]

At step two[5] of the evaluation process, the ALJ concluded that claimant had severe impairments of cervical disc disease and depression, but that these impairments were not severe enough to meet or medically equal one of the listings in Appendix 1. (Tr. 16). In assessing claimant's residual functional capacity, the ALJ evaluated claimant's complaints of pain, but did not specifically analyze claimant's hypertension. (Tr. 18-21). However, she did refer to Dr. Ritter's report that claimant's blood pressure was elevated on examination, as well as claimant's testimony that she had hypertension for which she was taking medication. (Tr. 18, 20).

The Commissioner argues that since the ALJ proceeded beyond step five of the sequential evaluation process after finding that claimant had severe impairments at

---

[4]*See Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986) (acknowledging that "*Stone* does not required a wholesale remand of all severity cases").

[5]The Commissioner has promulgated a five-step sequential evaluation process to determine whether a claimant is disabled: (1) If the claimant is presently working, a finding of "not disabled" must be made; (2) if the claimant does not have a "severe impairment" or combination of impairments, she will not be found disabled; (3) if the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded; (4) if the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and (5) if the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience and residual functional capacity, she will be found disabled. *Anthony v. Sullivan,* 954 F.2d 289, 293 (5th Cir.1992) (citing 20 C.F.R. §§ 404.1520, 416.920). A finding that the claimant is disabled or is not disabled at any point in the five-step review terminates the analysis. *Id.*

step two, the ALJ did not err in failing to cite *Stone*. (Rec. doc. 13, p. 4). *See Anthony*, 954 F.2d at 294 ("*Stone* merely reasons that the [severity] regulation cannot be applied to summarily dismiss, without consideration of the remaining steps in the sequential analysis, claims of those whose impairment is more than a slight abnormality."). While she concedes that *Loza* involved a step-five case, she distinguishes *Loza* on the grounds that Loza had received extensive treatment for organic brain syndrome, post traumatic stress disorder, anxiety, insomnia, headaches, arthritis, elbow surgery, and back pain for over twenty years. (Rec. doc. 13-1, p. 5); *Id.* at 381. Conversely, she argues, the claimant here has failed to provide evidence showing that her hypertension or chronic pain disorder "even minimally" affected her ability to work. (Rec. doc. 13, pp. 6-7).

In support of this argument, the Commissioner cites *Domingue v. Barnhart*, 388 F.3d 462 (5th Cir. 2004), in which plaintiff, as in this case, had argued that the ALJ failed to articulate the proper standard under *Loza*. In *Domingue*, Judge Donald E. Walter of this Court had determined that while the ALJ should have cited *Stone*, the omission in that case was harmless error because the ALJ had proceeded to the third step of the evaluation process. (Rec. doc. 13, attachment). The Fifth Circuit affirmed, finding that the ALJ did not misapply the standard because the ALJ had concluded that the alleged depression "was no impairment at all." *Id.* at 463. In

14

reaching this determination, the court reasoned as follows:

> The ALJ did not misapply the standard for identifying a non-severe impairment because the ALJ concluded that the alleged depression was no impairment at all. The ALJ's conclusion is fully supported by substantial evidence in the record. At the administrative level Domingue did not contend that depression was an impairment, and, in the courts, she pointed to no evidence indicating that her alleged depression affected her ability to work. *See Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) ("isolated comments" about claimant's intellectual functioning, viewed within the whole record, were insufficient to raise suspicion of mental retardation); *Shave v. Apfel*, 238 F.3d 592, 596 (5th Cir. 2001) (no evidence that an alleged impairment precluded employment).

*Id.* at 463.

Subsequent to *Domingue*, another court from within this Circuit addressed the same issue in *Zeno v. Barnhart*, 2005 WL 588223 (E.D. Tex. 2005). There, the plaintiff argued that the ALJ erred in failing to consider her impairments of hypertension and depression at step two of the sequential evaluation process. The ALJ had never mentioned hypertension or depression in his evaluation of Zeno's impairments, but had mentioned hypertension at the outset of his decision. The Eastern District of Texas invoked the harmless error rule[6] to find that remand to

---

[6]The harmless error rule is appropriate when "remand would be an idle and useless formality." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 1430, 22 L.Ed.2d 709 (1969). The Fifth Circuit has applied this rule in social security disability cases. *Frank v. Barnhart* 326 F.3d 618, 622 (5th Cir. 2003).

consider Zeno's alleged hypertension would not change the ALJ's analysis, reasoning

as follows:

> Hypertension generally is considered a remedial condition not disabling under the Social Security Act absent significant complications. Plaintiff never described how hypertension affected her, nor did plaintiff present evidence or testify as to any symptoms or complications of hypertension. Even more significantly, plaintiff's brief does not argue that plaintiff's hypertension affects her ability to work. Rather, plaintiff merely seeks to have the court remand the case on an assumed technical error. Absent evidence that an impairment significantly limits one's ability to do basic work activities, the impairment fails to meet the definition of medical severity. Hence, merely showing error falls short of showing the *prejudicial* error that Congress instructs courts to find before remanding.

(footnotes omitted). *Zeno* at *6.

Although *Zeno* is an unpublished opinion, the reasoning therein is applicable

to this case. While the claimant here has alleged a chronic pain impairment, no

physician has diagnosed her with such condition. To prove disability resulting from

pain, an individual must establish a medically determinable impairment that is

capable of producing pain. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995). Once

a medical impairment is established, the subjective complaints of pain must be

considered along with the medical evidence in determining the individual's work

capacity. *Id.* Disabling pain must be constant, unremitting, wholly unresponsive to

therapeutic treatment, and corroborated in part by objective medical testimony.

16

*Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

Here, claimant has not shown objective evidence of a condition which could cause disabling pain. Her treating physician, Dr. Miller, determined that she had reached MMI and could perform light or sedentary work. (Tr. 369-70). Consultative examination by Dr. Ritter revealed full range of motion of all extremities, negative straight leg raises, normal gait and station, and normal neurological findings. (Tr. 384). The most recent MRI showed no significant abnormality and no impingement of the nerve roots. (Tr. 425, 427, 430). As claimant's allegation of chronic pain is not corroborated by objective evidence, the ALJ's finding is entitled to deference.

As to claimant's hypertension, claimant did not list high blood pressure as one of her impairments, and pointed to no evidence, other than her own testimony, indicating that it affected her ability to work. In fact, while Dr. Ritter noted that claimant had elevated blood pressure on examination, he did not find that it interfered with her working ability. (Tr. 384-87). Additionally, in the Residual Functional Capacity Assessment, the state agency consultant observed that claimant had evidence of high blood pressure, but was able to maintain activities of daily living. (Tr. 417). Thus, there is no medical evidence indicating that claimant's hypertension affected her ability to work.

As claimant has cited no evidence indicating that her alleged impairments of chronic pain and hypertension affected her ability to work, the undersigned finds that the ALJ's failure to cite the *Stone* standard was harmless error. *Domingue*, 388 F.3d at 463.

Next, claimant argues that the ALJ's finding as to her residual functional capacity is not supported by substantial evidence. Specifically, she assets that she had limited push/pull ability because of her shoulder problems, and thus could not perform the full range of light work. (Rec. doc. 16, pp. 4-5).

In finding that claimant retained the residual functional capacity to perform light work, the ALJ relied on the report of Dr. Ritter, who determined that despite claimant's complaints of pain and numbness in the left arm, she had full range of motion of all extremities and could lift, carry , reach, handle, feel, push and pull. (Tr. 18-19, 384-87). The ALJ also relied on the state's Disability Determinations Services examiner's assessment that claimant could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 21, 413). As the ALJ's opinion is supported by the medical evidence, it is entitled to deference.

Third, claimant argues that the ALJ posed a defective hypothetical to the vocational expert. In particular, she asserts that the ALJ should have incorporated the mental impairment limitations listed in the state agency psychologist's report.

The ALJ considered the state agency psychologist's finding that claimant's pace and regular attendance would be "moderately impaired" by her depressive disorder. (Tr. 19, 408). However, she determined that because this opinion was of a non-examining physician, it was entitled to less weight than Dr. Buxton's. (Tr. 19). It is well established that the opinion of an examining physician should be accorded greater weight than the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).

The record reflects, however, that the examining physician, Dr. Buxton, also determined that claimant was moderately impaired due to dysthymic disorder. (Tr. 392). In fact, he opined that claimant's dysthmic disorder was more significant than her chronic pain. As to her dysthmic disorder, he found her "degree of impairment moderate and prognosis guarded."

Recognizing claimant's depression, the ALJ included in the hypothetical a limitation to one- to two-step types of jobs and limited public interaction. (65-66). However, she did not include any reference to claimant's moderate impairment due to dysthymic disorder as found by both the examining and non-examining mental

health experts. Dr. Upton found that she was not only moderately impaired as to her ability to understand, remember and carry out detailed instructions and interact with the public, but also as to her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 394-95). These limitations were not included in the ALJ's hypothetical. Thus, the hypothetical cannot be said to "incorporate reasonably all disabilities of the claimant recognized by the ALJ." *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).[7] Accordingly, the undersigned finds that this case should be **REMANDED** for further proceedings.

Finally, claimant argues that the ALJ's failure to reopen the claimant's prior partially favorable decision was error. The Commissioner argues that because the ALJ denied claimant's request to reopen on the basis of *res judicata*, the court does not have jurisdiction to review the Commissioner's refusal to reopen absent a

---

[7]The case cited in claimant's Motion to Submit Pertinent and Persuasive Authority (Rec. doc. 18), *Wiederholt v. Barnhart*, 121 Fed.Appx. 833, 2005 WL 290082 (10th Cir. 2005), is from outside of this Circuit and is nonbinding on this Court. The Fifth Circuit's position regarding the requirements for hypothetical questions is clearly stated in *Boyd* and *Bowling, supra.*

colorable constitutional claim. *Califano v. Sanders*, 430 U.S. 99, 108-09 (1977). However, the record reflects that the ALJ denied reopening under the social security regulations, not *res judicata*. (Tr. 15).

The social security regulations allow a decision to be reopened for good cause if done within four years of the initial determination on a DIB application. *Cole v. Barnhart*, 288 F.3d 149, 150 (5th Cir. 2002). According to the regulations, good cause exists if new and material evidence is furnished, a clerical error was made, or the evidence considered in making the determination shows on its face that an error was made. *Cieutat v. Bowen*, 824 F.2d 348, 357 (5th Cir. 1987).

In her decision, the ALJ found that no basis for reopening the prior decision. (Tr. 15). Claimant argues that the prior decision from ALJ Gregory Wilson should have been reopened because ALJ relied on vocational expert testimony but did refer to it in his "findings." (Rec. doc. 12, p. 14; rec. doc. 16, p. 8). However, unlike *Scott v. Shalala*, 30 F.3d 33 (5th Cir. 1994), cited by claimant, ALJ Wilson made more than just "passing reference" to the vocational expert's testimony. (Tr. 27B, C). Instead, the ALJ in this case expressly relied upon the vocational expert's identification of jobs as evidence of claimant's ability to perform work in the national economy, despite her non-exertional limitations. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). Thus, there was no error.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to obtain vocational expert testimony and that the ALJ's hypothetical questions reasonably incorporate all of claimant's mental limitations. Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing. Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS**

REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed this 14 day of July, 2005, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

COPY SENT
DATE 7-14-05
BY ___
TO ___
CMH

23